Koji F. Fukumura (*Pro Hac Vice*)
Ryan E. Blair (*Pro Hac Vice*)
Heather M. Speers (*Pro Hac Vice*)
Linh K. Nguyen (*Pro Hac Vice*)
**COOLEY LLP**
4401 Eastgate Mall
San Diego, CA  92121
Telephone: (858) 550-6000
Email: kfukumura@cooley.com
        rblair@cooley.com
        hspeers@cooley.com
        lknguyen@cooley.com

Milo Steven Marsden (#4879)
**DORSEY & WHITNEY LLP**
111 South Main Street, Twenty-First Floor
Salt Lake City, Utah 84111-2176
Telephone: (801) 933-7360
Email: marsden.steve@dorsey.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SOLOMON ABADY, Individually and On Behalf of All Others Similarly Situated,<br><br>Lead Plaintiff,<br><br>vs.<br><br>LIPOCINE INC. and MAHESH V. PATEL,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Civil No. 2:19-cv-00906-CW<br><br>District Judge Clark Waddoups<br>Magistrate Judge Cecilia M. Romero |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT....................................................................................................... 2

        A.      Plaintiffs Fail to Plead Falsity................................................................. 2

                1.      The Opposition substantially narrows the set of challenged
                        statements........................................................................................ 3

                2.      Lipocine's opinion statements on TLANDO's efficacy are
                        inactionable. ................................................................................... 3

                3.      Lipocine's disclosures about the DV Study results were not
                        misleading. ...................................................................................... 5

                4.      The remaining disclosures were neither false nor misleading. ................... 6

        B.      Plaintiffs Fail to Plead a Strong Inference of Scienter........................... 7

                1.      Plaintiffs identify no facts supporting scienter for their theory of
                        fraud. ............................................................................................... 7

                2.      Plaintiffs do not connect Dr. Patel's purported knowledge of
                        omitted information to an intent to deceive. ............................... 8

                3.      Plaintiffs allege no cognizable motive....................................... 9

                4.      Settlement of an unrelated lawsuit does not support scienter................... 9

        C.      Plaintiffs Fail to Plead Loss Causation. ............................................... 10

III.    CONCLUSION................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2007 Novastar Fin. Inc., Sec. Litig.*,
  579 F.3d 878 (8th Cir. 2009) ................................................................................6

*In re Arrowhead Pharm., Inc. Sec. Litig.*,
  2017 WL 8791111 (C.D. Cal. Dec. 21, 2017) ....................................................7, 8

*Chang v. Accelerate Diagnostics, Inc.*,
  2016 WL 3640023 (D. Ariz. Jan 28, 2016) ..........................................................6

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) .............................................................................9, 10

*Emps.' Ret. Sys. of R.I. v. Williams Cos.*,
  889 F.3d 1153 (10th Cir. 2018) ..........................................................................2, 5

*Eshelman v. Orthoclear Holdings, Inc.*,
  2009 WL 506864 (N.D. Cal. Feb. 29, 2009) ........................................................10

*In re Homebanc Corp. Sec. Litig.*,
  706 F. Supp. 2d 1336 (N.D. Ga. 2010) ..................................................................9

*Hughes v. Accretive Health, Inc.*,
  2014 WL 4784082 (N.D. Ill. Sept. 25, 2014) .........................................................2

*In re Intel Corp. Sec. Litig.*,
  2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ........................................................6

*Kessman v. Myriad Genetics, Inc.*,
  2019 WL 1330363 (D. Utah Mar. 25, 2019) ..........................................................8

*Medina v. Clovis Oncology, Inc.*,
  215 F. Supp. 3d 1094 (D. Colo. 2017) ...................................................................9

*Morman v. Campbell Cnty. Mem'l Hosp.*,
  632 F. App'x 927 (10th Cir. 2015) .........................................................................3

*Nakkhumpun v. Taylor*,
  782 F.3d 1142 (10th Cir. 2015) ..............................................................................4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ...............................................................................................9

*In re Novatel Wireless Sec. Litig.*,
   830 F. Supp. 2d 996 (S.D. Cal. 2011)..................................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)..........................................................................................................3, 4

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ...............................................................................................5

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015)....................................................................................6

*Smith v. Antares Pharma, Inc.*,
   2020 WL 2041752 (D.N.J. Apr. 28, 2020) .......................................................................4, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................................................7

*In re Williams Sec. Litig.-WCG Subclass*,
   558 F.3d 1130 (10th Cir. 2009) .........................................................................................10

*In re Zagg, Inc. Sec. Litig.*,
   797 F.3d 1194 (10th Cir. 2015) ...........................................................................................7

## I.    INTRODUCTION

Plaintiffs' Opposition is premised on the notion that Defendants intentionally obscured certain TLANDO trial results to mislead investors about the likelihood of FDA approval. Specifically, Plaintiffs complain that Defendants omitted the "per day" results used to determine whether TLANDO met the FDA's prespecified secondary endpoints for maximum concentration of testosterone ("Cmax"). This theory is premised solely on hindsight and makes no sense when considering the events in the order they occurred.

In January 2018—*i.e.*, a *year* before the Class Period began—Lipocine publicly disclosed that TLANDO did not meet the secondary endpoints and provided the specific "per day" results supporting that conclusion. (¶¶ 46–47.) Four months later, the FDA sent Lipocine a complete response letter ("CRL") requesting justification as to why the Cmax secondary endpoints *were not applicable* to TLANDO. (¶¶ 6, 54, 75, 83, 89.) In other words, Lipocine was required to demonstrate why the Cmax deficiency should not preclude FDA approval. Throughout the Class Period, Defendants informed investors that they were performing additional analyses of existing data to provide the justification requested by the FDA. (¶¶ 5, 7, 71, 75, 83, 89.) Given these undisputed facts, it is simply not plausible that any reasonable investor could have been misled regarding TLANDO's secondary endpoint results.

Unfortunately, the FDA did not agree with Lipocine's analyses that the secondary endpoints were not applicable to TLANDO, and in November 2019, the FDA issued another CRL, citing TLANDO's failure to meet those endpoints. This is where Plaintiffs begin their analysis. Working backwards from the 2019 CRL, Plaintiffs argue (without support) that the FDA expected Lipocine to perform additional studies demonstrating that TLANDO met the secondary endpoints in order resolve the Cmax issue. But Plaintiffs identify no FDA communication, internal email, or other *contemporaneous* document indicating that the FDA would even accept, much less expect, new trial results with different Cmax results for the same exact drug.

-1-

The balance of the Opposition focuses on peripheral issues, none of which address the Complaint's primary pleading deficiencies.  For example, Plaintiffs' falsity argument centers on rebutting a "truth on the market" defense that Defendants did not make, and which does not apply to cases like this one where Defendants ***themselves*** previously disclosed the purportedly omitted information.  Plaintiffs invoke the "truth on the market" doctrine as a strawman to avoid addressing the fact that none of the purportedly omitted information "alter[ed] the meaning" of any challenged statement.  *Emps.' Ret. Sys. of R. I. v. Williams Cos.*, 889 F.3d 1153, 1164 (10th Cir. 2018).

Similarly, Plaintiffs' scienter arguments focus largely on Defendants' knowledge of the DV Study results, their purported motive, and the settlement of a prior lawsuit, without identifying any particularized facts that Defendants intended to defraud investors.  Perhaps most telling is Plaintiffs' attempt to distance themselves from their theory that Defendants knew the FDA was "exceedingly unlikely" to approve TLANDO to avoid addressing the complete absence of any supporting allegations.  In sum, the Opposition confirms that the Complaint's defects cannot be remedied and should therefore be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Plead Falsity.

The Court must be able to identify, precisely, what the allegedly false statements are when ruling on a motion to dismiss.  The Opposition, however, addresses the statements collectively, obscuring the fact that many of the challenged statements and many of the arguments in the Opening Brief remain unaddressed.  To illuminate these failures, Defendants refer to the challenged statements by the numbering in Appendix 1, which was provided with the Opening Brief to piece together the puzzle-pled Complaint.[1]

---

[1] Plaintiffs claim Defendants improperly raise puzzle-pleading "as a pretext to attach a misleading 'Appendix.'"  (Opp. at 11 n.4.)  Tellingly, however, they do not even attempt to explain what is purportedly misleading about Appendix 1.  *See Hughes v. Accretive Health, Inc.*, 2014 WL 4784082, at *5–6 (N.D. Ill. Sept. 25, 2014) (rejecting plaintiff's footnote argument comparing its

### 1.     The Opposition substantially narrows the set of challenged statements.

The Opposition does not address the alleged falsity of Statement Nos. 1 and 13–17, which discuss the deficiencies noted in the 2018 CRL, Lipocine's plans to address those deficiencies, and its opinions as to its success in doing so. (*See generally* Opp. at 10–18.) In their Opening Brief, Defendants argued that none of those statements were actionable. Because the Opposition does not address them, Plaintiffs have abandoned their claims as to those statements. *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (finding plaintiff "abandoned [her] argument when she failed to argue it in response to the motion to dismiss").

### 2.     Lipocine's opinion statements on TLANDO's efficacy are inactionable.

Plaintiffs argue that Statement Nos. 2 and 3, which address TLANDO's efficacy, are misleading because they purportedly gave the impression that the Cmax results would not be "a significant impediment to FDA approval." (Opp. at 14; *see also id.* at 11–12.) This does not make any sense. Of course the secondary endpoints *might* preclude FDA approval. They already had, as evidenced by the 2018 CRL. And although the FDA provided Lipocine with a potential solution to the Cmax deficiency—*i.e.*, by providing justification that the Cmax secondary endpoints are not applicable to TLANDO—Lipocine never guaranteed the FDA would agree with its analyses.

Plaintiffs' remaining arguments as to Statement Nos. 2 and 3 are equally unavailing.

**Statement No. 2: "Met key secondary endpoint – No eligible subjects with T levels >2500 ng/dL."** Plaintiffs argue this statement was false because one subject (who should not have been included in the study) exceeded the 2500 ng/dL limit. (Opp. at 11.) That, however, is precisely the point of the clarification regarding *eligible* subjects. Read in context—as required under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 190 (2015)—it is apparent that this statement is premised on Lipocine's opinion as to the

---

purported "puzzle-pled" allegations to a "twelve-piece jigsaw given to toddlers" as insufficient and dismissing for failure to satisfy the PSLRA's pleading requirements).

relevant population for analysis.  *See Smith v. Antares Pharma, Inc.*, 2020 WL 2041752, at *5 (D.N.J. Apr. 28, 2020) ("Interpretations of clinical trial data are considered opinions.").  Thus, to demonstrate falsity, Plaintiffs must allege facts that Lipocine did not "actually or reasonably" hold this opinion.[2]  *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015) (citing *Omnicare*, 575 U.S. at 194).  (*See also* Op. Br. at 16–17.)  They fail to do so.

Plaintiffs argue Defendants' belief was not reasonable because "the FDA had ***rejected*** the suggestion that a protocol-violating subject should be removed from the data to allow for TLANDO to have met the 'key' 2500 ng/dL limit secondary endpoint."[3]  (Opp. at 13 (citing ¶¶ 48–50, 70); *see also id.* at 11–12.)  But Plaintiffs misleadingly omit key portions of their own allegations which directly contradict their argument.  (*See, e.g.*, ¶ 48 (noting the only subject who exceeded the 2500 ng/dL limit "had a history of cholecystectomy, which was one of the exclusion criteria" and that "[i]t is ***unclear*** whether this protocol violation contributed to the Cmax excursion"); ¶ 49 (requesting that "***the committee explore this issue*** in detail"); ¶ 70 ("***unclear***").)

**Statement No. 3: "Other secondary endpoints generally consistent with approved products."**  Plaintiffs argue this statement was misleading because "the FDA had never approved any products with endpoints similar to TLANDO."  (Opp. at 12; *see also id.* at 13.)  However, whether trial results are "generally consistent" is a matter of opinion.  (*See* Op. Br. at 18–19.)  Again, Plaintiffs identify no facts demonstrating this opinion was not "actually or reasonably" held.  *Nakkhumpun*, 782 F.3d at 1159.  In fact, the Opposition does not even address this argument, much less refute it.[4]

---

[2] Plaintiffs argue that Defendants' belief that the protocol violator should be excluded is inconsistent with their public disclosures that TLANDO did not meet any of the secondary endpoints. (Opp. at 12.)  This is nonsensical.  Lipocine can disclose trial results based on the entire trial population while also believing that ineligible subjects should be excluded from the determination as to whether the endpoint was met.

[3] Unless otherwise noted, emphasis is added and internal quotation marks and citations are omitted.

[4] Plaintiffs are wrong that the Opening Brief "does not—and cannot—contest the falsity or materiality" of Statement No. 3.  (Opp. at 12.)  Statement No. 3 is addressed ***three times*** in the Opening Brief.  (*See* Op. Br. at 11–12, 13 n.15, 16 n.18.)

**3.      Lipocine's disclosures about the DV Study results were not misleading.**

As part of their omnibus argument, collectively addressing all the statements challenged in Lipocine's quarterly and annual SEC filings, Plaintiffs argue that the disclosures about the DV Study results (Statement Nos. 9–11) were misleading because they did not include the specific "per day" results. (Opp. at 12–13.) To be clear, Plaintiffs do not argue that the disclosures Defendants made were inaccurate. (*See* Op. Br. at 18.) Instead, they argue that Defendants did not provide enough detail. (*See* Opp. at 13, 17.)

But simply because "some investors might have wanted more extensive information . . . [that is not] sufficient to make the alleged original statements false or misleading."[5] *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 881 (9th Cir. 2012). "A duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it ***alters the meaning of the statement***." *Emps.' Ret. Sys. of R.I.*, 889 F.3d at 1164. The Opposition is noticeably silent on this binding point of law. Plaintiffs do not (and cannot plausibly) argue that including the specific "per day" results would "alter[] the meaning of the statement," *id.*, which on its face states that TLANDO did not meet the endpoints under a "per day" analysis. (Statement No. 10.) Accordingly, Plaintiffs have failed to demonstrate that Lipocine had any duty to disclose the specific "per day" results, or that the absence of such disclosure rendered any statement misleading.

Moreover, Lipocine ***did*** disclose the specific "per day" results in January 2018, and had no duty to repeat them throughout the Class Period. (Op. Br. at 13 (citing cases).) Plaintiffs attempt to side-step this argument by mischaracterizing it as a "truth-on-the-market" defense. (Opp. at 16–17.) That is a strawman—none of the authority cited by Defendants relied on such defense. That is because a "'truth-on-the-market' defense attempts to prove that the truth made its way to the

---

[5] Moreover, the focus during the Class Period was not on the Cmax results themselves, but instead, on why TLANDO should be approved ***despite*** failing to meet the Cmax secondary endpoints.

market through sources ***other than defendants***."[6]  *Chang v. Accelerate Diagnostics, Inc.*, 2016 WL 3640023, at *5 (D. Ariz. Jan 28, 2016).  Here, conversely, Defendants "argue that ***they*** disclosed all required information, not that they failed to make required disclosures but should be excused because ***other sources*** have already made the same information available."  *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *13 (N.D. Cal. Mar. 29, 2019); *see also In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, at 547 (S.D.N.Y. 2015) ("Defendants had no duty to disclose the allegedly omitted information because ***they*** had already disclosed substantially similar information").[7]

### 4. The remaining disclosures were neither false nor misleading.

Plaintiffs fail to meaningfully address the remainder of the challenged statements, which detail the deficiencies identified in the 2018 CRL (Statement No. 4), Lipocine's Post Action Meeting with the FDA and its plan for resolving the deficiencies (Statement No. 5), expected timing for resubmission of the NDA (Statement No. 6), the secondary endpoint thresholds and prespecified analyses that were conducted (Statement Nos. 7–8), and the DF Study results (Statement No. 12).  Indeed, Plaintiffs' one-sentence summary of the challenged statements does not even attempt to encompass Statement Nos. 4, 5, 6, or 12.  (Opp. at 13.)  Nor do Plaintiffs address any of the arguments raised in the Opening Brief as to the remaining alleged omissions. (*See, e.g.*, Op. Br. at 17 (discussing alleged omission regarding the relevance of the DF Study).) In short, Plaintiffs' cursory analysis only underscores the absence of any "link between an alleged misleading statement and specific factual allegations demonstrating the reasons why the statement was false or misleading, as the PSLRA requires."  *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579

---

[6] Plaintiffs' authority is not to the contrary (*See* Opp. at 16 n.8 (citing cases where disclosures were made by the FDA, not the defendants).)

[7] Plaintiffs attempt to distinguish *Sanofi* by arguing that the statement challenged in that case was only a single sentence, and thus additional detail was not necessary.  (Opp. at 16 n.9.)  Yet, that is precisely what Plaintiffs take issue with here—a single sentence that did not provide the specific "per day" results.  (Statement No. 10.)

F.3d 878, 883–84 (8th Cir. 2009).

### B. Plaintiffs Fail to Plead a Strong Inference of Scienter.

Plaintiffs also fail to identify any particularized factual allegations supporting a strong inference of scienter, which represents "a *heavy burden* at the pleading stage." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015). Looking at the allegations holistically, as required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007), three facts are clear: (1) in 2018, the FDA issued a CRL requesting that Lipocine justify why the secondary endpoints were not applicable to TLANDO; (2) such justification would be unnecessary if TLANDO's Cmax results were sufficient, on their own, to warrant approval; and (3) throughout the Class Period, Defendants repeatedly stated they were performing analyses of existing data to provide the justification requested by the FDA. The most natural and compelling inference from these facts is that Defendants did not know the FDA would reject their justification and issue another CRL based on the TLANDO's failure to meet the secondary endpoints.

Plaintiffs attempt to counter this inference with four arguments: (1) they are not required to plead that Defendants knew the FDA would issue a CRL; (2) Dr. Patel's knowledge of the DV Study results, alone, demonstrates an intent to defraud; (3) Defendants had a motive to lie in order to raise capital; and (4) Lipocine's prior settlement of an unrelated lawsuit is somehow relevant. None have merit, and none are sufficient to overcome the more cogent non-culpable inference.

#### 1. Plaintiffs identify no facts supporting scienter for their theory of fraud.

Plaintiffs do not dispute that where a complaint is premised on the theory that a defendant knew its drug would not receive FDA approval, plaintiff must allege facts supporting such knowledge. (Opp. at 23 n.14 (citing *In re Arrowhead Pharm., Inc. Sec. Litig.*, 2017 WL 8791111, at *6 (C.D. Cal. Dec. 21, 2017).) Instead, Plaintiffs argue they do not have to plead such facts because their Complaint is premised on a different theory—*i.e.*, that "Defendants intentionally created a false impression that the Cmax secondary endpoints were not a significant impediment

-7-

to the FDA's approval of TLANDO." (*Id.*) Plaintiffs are arguing semantics. There is no difference between alleging that Defendants knew the drug would not be approved (as in *Arrowhead*), and alleging that Defendants knew the "FDA was exceedingly unlikely to approve the TLANDO NDA" (as alleged here). (¶¶ 73, 77, 79, 81, 87, 91, 93.)[8]

### 2. Plaintiffs do not connect Dr. Patel's purported knowledge of omitted information to an intent to deceive.

Plaintiffs grossly overstate the purported "concession" that Dr. Patel knew the results of the DV Study. (Opp. at 3, 19.) They claim Defendants "concede[d] that Patel was fully aware of *all* of the alleged omitted material facts at the time the challenged statements were made." (*Id.* at 19.) This is false. Defendants acknowledged that Dr. Patel knew the results of the DV Study, but certainly did not concede he knew every purportedly omitted fact—many of which Plaintiffs have not even established exist. (*See* Op. Br. at 21.) Moreover, this "concession" adds nothing to the inference of scienter because Plaintiffs do not allege that Defendants' disclosures of the DV Study results were false or inconsistent with the underlying data.[9] (*Cf.* Opp. at 19.)

Additionally, as Plaintiffs recognize, knowledge of the omitted facts alone is insufficient to plead scienter; they must plead facts that Defendants "knew that failure to reveal the potentially material fact would likely mislead investors." (Opp. at 19.) Plaintiffs identify none. Instead, they rely solely on one conclusory statement that Defendants "were fully aware that omitting material facts would likely mislead [i]nvestors." (*Id.* at 20.) This is inadequate. (*See* Op. Br. at 21–22.)

Moreover, it "does not make . . . sense" that Defendants intentionally omitted the "per day" results to mislead investors when (1) they *disclosed* the specific "per day" Cmax results in January 2018, (2) they *openly admitted* the results failed to meet the secondary endpoints, (3) the FDA had

---

[8] Nor do Plaintiffs address *Smith*, which is premised on the same theory alleged here and further demonstrates the inadequacy of Plaintiffs' scienter allegations. (*See* Op. Br. at 20–21.)

[9] The core operations inference (Opp. at 20–21) fails for the same reasons: Plaintiffs identify no "allegations about the defendants' actual exposure to . . . information" that contradicted their public statements. *Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at *8 (D. Utah Mar. 25, 2019).

already acknowledged this failure when it issued the 2018 CRL, and (4) Defendants had shifted their focus to the FDA's request for justification as to why the Cmax secondary endpoints *were not applicable to TLANDO*. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).

### 3. Plaintiffs allege no cognizable motive.

Plaintiffs do not dispute that a "motive to raise capital [is] insufficient as a matter of law." (Op. Br. at 22.)  Instead, Plaintiffs argue that because "Lipocine's continued viability depended upon" the success of TLANDO, this case falls within the narrow exception found in *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1128 (D. Colo. 2017).  (Opp. at 22–23.)  Plaintiffs are wrong.  The holding in *Clovis* was premised on the fact that Clovis had other drug candidates in its pipeline, and therefore even if the drug at-issue failed, the defendants had motivation to conceal negative trial data in order to finance its other drugs under development.  215 F. Supp. 3d at 1128.  Here, however, Plaintiffs identify no other drugs in Lipocine's pipeline that would support a motive to temporarily boost the stock.

Moreover, Plaintiffs do not dispute that Dr. Patel did not sell any Lipocine stock during the Class period, and instead ***increased*** his holdings.[10]  "The fact that Defendants did not take advantage of the purportedly inflated price to sell their holdings overwhelms the inference that they were knowingly withholding from the public damaging and material information." *In re Homebanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1359 (N.D. Ga. 2010).

### 4. Settlement of an unrelated lawsuit does not support scienter.

Relying solely on *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005), Plaintiffs argue that Lipocine's prior settlement of a securities fraud action contributes to an inference of scienter.  (Opp. at 21–22.)  But *Bridgestone* provides no support for their argument.  There, the plaintiff alleged that defendants made false statements about

---

[10] Plaintiffs' argument that this was a stock award, not a purchase (Opp. at 24), is wrong.  The Form 4 shows that Dr. Patel paid market price for the shares he acquired on May 24, 2019.  (*See* ECF 48-9 (Ex. H).)

the safety of Firestone tires.  399 F.3d at 685.  That same issue—the safety of Firestone tires—was the centerpiece of multiple prior product liability suits "under which the settlement agreements with plaintiffs were sealed [and] the parties entered into stipulated protective orders to conceal discovery."  *Id.*  Because "[t]he gravamen of these [prior] claims and lawsuits . . . was closely parallel to that of [the current] suit," the "quick settlement" supported an inference of scienter.  *Id.*

Here, the prior lawsuit against Lipocine has nothing in common with this action.  It involved a completely different trial (the SOAR study, which predated the DV Study), and concerned a completely different issue (use of a dose titration scheme that differed from that which Lipocine proposed to use in clinical practice).  None of the issues from the previous lawsuit "closely parallel" the ones here.  The only similarities are that both lawsuits involve Lipocine receiving a CRL for TLANDO, albeit for different reasons.  It does not support scienter.  *Eshelman v. Orthoclear Holdings, Inc.*, 2009 WL 506864, at \*8 (N.D. Cal. Feb. 29, 2009) ("[S]ettlements can be made for many reasons without any indication of the relative merit of the allegations.").

### C.    Plaintiffs Fail to Plead Loss Causation.

Plaintiffs "bear[] the burden of showing that [their] losses were attributable to the revelation of the fraud and not the myriad other factors that affect a company's stock price."  *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009).  Here, Plaintiffs argue that the stock dropped "upon the revelation that the FDA has rejected TLANDO ***because of its failure to meet the Cmax secondary endpoints***."  (Opp. at 25.)  But this was not new information—Lipocine disclosed TLANDO's failure to meet the secondary endpoints no fewer than five times since June 2017.  Accordingly, this disclosure was, "by definition, not corrective" and inadequate to plead loss causation.  *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1019 (S.D. Cal. 2011).  Plaintiffs' "truth on the market" argument also fails.  (*See* Section II.A.3.)

### III.    CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated:  October 22, 2020                    COOLEY LLP
                                            Koji F. Fukumura
                                            Ryan E. Blair
                                            Heather M. Speers
                                            Linh K. Nguyen


                                            By:   */s/ Ryan E. Blair*
                                                            Ryan E. Blair

                                            DORSEY & WHITNEY LLP
                                            Milo Steven Marsden

                                            *Attorneys for Defendants*